IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SHAWN RENAE CARD                                                                              PLAINTIFF

V.                                                                     CIVIL ACTION NO. 1:10CV1-B-D

FRED'S STORES OF TENNESSEE, INC.                                                       DEFENDANT

**MEMORANDUM OPINION**

This cause comes before the court upon the defendant's motion for summary judgment. Upon due consideration of the motion, response, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

The plaintiff, Shawn Renae Card, brings this action against her former employer, defendant Fred's Stores of Tennessee, Inc. ("Fred's"), asserting that the defendant terminated her employment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 - 634. The plaintiff, a former Fred's store manager at its Fulton, Mississippi store, alleges that she was harassed, in part by frequent reprimands from her district manager, Terry Petty, and was dismissed "because of favoritism and discrimination in favor of a much younger employee," her assistant manager Blair Denham. Card, who was forty-four at the time of her termination, was replaced as store manager by another younger employee, Jamie Bell.

Card began her employment (already in her forties) with the defendant in September 2007 as an assistant manager at the Fulton store. On November 30, 2007, Petty promoted her to manager of the store. As store manager, she had a wide range of duties directing the operation of the store, and she reported directly to the district manager. Petty testified that Card was an "average" store manager but that she tried hard in her position.

Petty promoted Blair Denham from "Operations Expert" in the Fayette, Alabama Fred's store to assistant manager of the Fulton store in early 2008. Petty asserts that he recruited Denham for the position of store manager in a new store in Reform, Alabama, and promoted her to the assistant manager position in Fulton so that she could train with Card. Card denies that she had knowledge of this arrangement at the time. Card asserts that once Denham began work at the Fulton store, she began telling other employees that she was there to take over Card's store. Card also contends that Petty expressed to her an attraction to Denham – that he thought she was pretty, and "he just loved the way [Denham] talked. It just drove him crazy, her twang." Card alleges that once Denham came to the Fulton store, Petty's attitude toward Card changed and that he became "aggressive, harsh, derogatory . . . ."

The defendant contends that its reason for terminating Card[1] is a list of infractions which are primarily uncontested, and only one took place while Denham was assigned to the Fulton store. The incident occurred when Card violated the Fair Labor Standards Act[2] by allowing a subordinate hourly employee to work "off the clock." The employee, Vicki Gassaway, complained that Card would require her to clock out at night but continue to perform work. Card admits that she allowed Gassaway to work off the clock and that she was "impressed that [Gassaway] wanted to give her own time for the common goal of [the] store . . . ." The remaining disciplinary actions occurred after Denham was transferred to the Reform, Alabama

---

[1]The defendant maintains that Petty did not terminate Card but that she walked out of a disciplinary meeting thus indicating that she was resigning. The defendant, however, concedes for the purposes of the summary judgment motion that Card was terminated; thus, there is no question of fact on this issue.

[2] 29 U.S.C. §§ 203 - 219.

2

store in June 2008. On July 24, 2008, Petty gave Card a written warning for a number of policy violations including not working a proper schedule, not maintaining paperwork, lack of control in cash overages and shortages, and failing to verify bank deposits. Card does not dispute these infractions. Next Petty issued a written reprimand to Card for opening the store thirty minutes late. Card admits that she committed this infraction and acknowledges that it was a terminable offense. Card's next reprimand occurred in October 2008 when Petty performed a routine audit of the Fulton store. Among the infractions discovered was Card's failure to remove a bar from the back exit door. Card admits the incident and acknowledges that she violated an Occupational Safety and Health Administration ("OSHA") regulation[3] but asserts that Petty was being "ticky" in reprimanding her for the mistake.

Also in October 2008, Fred's district loss prevention manager, Jeff Burt, investigated Card's store due to allegedly excessive irregularities of shortages and merchandise handling. During the investigation, Burt observed a surveillance video allegedly depicting Card purchasing an item for less than the clearance price and holding it behind the counter for purchase. Burt returned to the store on October 16, 2008, to interview Card about this transaction and other policy violations. Petty participated in this meeting with Card. The plaintiff contests only one detail of one infraction addressed at the meeting. The defendant asserts that Card improperly marked down the price of a "chiminea" (a metal item used for building a fire on a patio or porch) and left it behind the register before purchasing it. Card does not deny her action and admits that she purchased it "for $8.00 less than it was supposed to be." (She asserts that employees were

---

[3] 29 C.F.R. § 1910.36(d)(1). "An exit door must be unlocked. Employees must be able to open an exit route from the inside at all times without keys, tools, or special knowledge."

3

allowed to purchase marked-down merchandise but does not clarify whether this item was properly marked down.) Card claims she purchased the item prior to leaving it behind the register but admits that leaving it behind the register – previously purchased or not – was a policy violation. At some point Card left the investigative meeting without being excused and shortly thereafter turned over her store keys to Petty. Card asserts that she was fired. The defendant asserts that Petty and Burt had no intention of firing Card at the October 16, 2008 meeting but concedes for the purposes of summary judgment that Card was terminated, thereby resolving any potential question of fact on the matter.

The plaintiff filed her charge of discrimination with the EEOC on April 2, 2009, and subsequently received a Notice of Right to Sue. She brought the present action on January 6, 2010, alleging that the defendant violated the ADEA in terminating her employment. The defendant has now moved for summary judgment.

## Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c), 56(e)). Before

4

finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Analysis

The ADEA provides, in pertinent part, that "[i]t shall be unlawful for an employer to...discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish an ADEA claim, a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343, 2351 (2009)).

The plaintiff in the case sub judice has produced no direct evidence of age discrimination and must therefore establish a prima facie case through circumstantial evidence. The Supreme Court "has not definitively decided whether the evidentiary framework of *McDonnell Douglas Corp. v. Green*, utilized in Title VII cases, is appropriate in the ADEA context." *Gross*, 129 S. Ct. at 2349 n.2 (citation omitted). Both parties in the present case, however, rely on *McDonnell Douglas* – and appropriately so – as the law of this circuit is to apply the *McDonnell Douglas* framework to age discrimination cases. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) ("While the Supreme Court has not definitively resolved whether [*McDonnell Douglas*] is [applicable in ADEA cases], we are bound by our circuit precedent applying *McDonnell Douglas* to age discrimination cases.").

To establish a prima facie case under *McDonnell Douglas*, the plaintiff must show "that she: (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." *Okoye v. Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001). If the plaintiff can establish a prima facie case, the employer is afforded the "opportunity to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 420 (5th Cir. 2006). "Once the employer offers evidence of such a legitimate reason, the burden shifts back to the plaintiff-employee to raise a genuine issue of material fact that this non-discriminatory reason is merely pretextual." *Id.* At this point, "the factual inquiry proceeds to a new level of specificity." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

The defendant in the present case has stipulated for the purposes of summary judgment only that the plaintiff can establish a prima facie case. The defendant thus focuses on its legitimate, non-discriminatory reason for terminating Card's employment. The proffered reason is Card's inadequate job performance and a long list of infractions and policy violations committed by Card and her walking out of an official meeting with her supervisors without permission. The defendant has thus met its burden to provide a legitimate, non-discriminatory reason for Card's termination, and the burden now shifts back to the plaintiff.

"In determining whether the plaintiff's rebuttal precludes summary judgment, 'the question is whether the plaintiff has shown that there is a genuine issue of material fact as to whether [the defendant's] reason was pretextual.'" *Moss*, 610 F.3d at 922 (quoting *Jackson*, 602

6

F.3d at 378-79). "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of a doubt is insufficient." *EEOC v. Louisiana Office of Community Svcs.*, 47 F.3d 1438, 1444 (5th Cir. 1995). Pretext may be shown "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* If the plaintiff shows that she was "clearly better qualified (as opposed to merely better or as qualified) than the employees who are selected," she will have successfully shown "that the employer's proffered reasons are pretextual." *Moss*, 610 F.3d at 922; *see also Burdine*, 450 U.S. at 259 ("The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination.").

Card has made no assertions that she was "clearly better qualified" than Jamie Bell, the younger manager who replaced her.[4] Nor has she suggested that she was clearly better qualified than Denham. Card admits that she was considered an "average" manager – neither special nor poor. Thus, this method of showing pretext as set forth in *Moss* is unavailable in this case.

Card has instead focused her argument on alleged disparate treatment between herself and the "much younger and prettier" Blair Denham. Card asserts that after Denham came to the store as an assistant manager, Petty became "aggressive, harsh, derogatory . . ." toward Card and in any disagreement would take Denham's side. Card makes no specific allegations of disparate treatment beyond theses conclusory allegations, however; and it is, of course, well-settled that

---

[4]In fact, the plaintiff has apprised the court of very little information about Bell, though ostensibly it is the hiring of Bell, who was in her late twenties at the time, which constitutes the final element of the prima facie case to which the defendant has stipulated.

7

"conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" at the summary judgment stage of a case. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). Card also fails to meet the requirement of setting forth her showing of pretext with a "new level of specificity." *Burdine*, 450 U.S. at 255. The only specific incident Card alleges she suffered while Denham was employed at the Fulton store occurred when Card was reprimanded for an admitted violation of the Fair Labor Standards Act. The court does not view this incident as harassment or disparate treatment as there is no question that the reprimand was fully justified and in accordance with the law.

In effect, what the plaintiff alleges in regard to Denham is what is known as "paramour favoritism." The Fifth Circuit has examined such claims in a Title VII gender discrimination context and found that "'paramour favoritism' is not an unlawful employment practice under Title VII because the fact that [the plaintiff] may have been terminated for complaining about favorable treatment received by [an alleged paramour] is unrelated to [the plaintiff's] gender." *Wilson v. Delta State Univ.*, 2005 WL 1939678, at *3 (5th Cir. 2005). The court has also stated, "When an employer discriminates in favor of a paramour, such an action is not sex-based discrimination, as the favoritism, while unfair, disadvantages both sexes alike for reasons other than gender." *Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 382 (5th Cir. 2003); *see also Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642, 656 n.6 (5th Cir. 2002).

This court finds no reason why the same rationale should not be applied in an ADEA context. Applying the Fifth Circuit's rationale to the case at bar, the court finds no merit to Card's claims regarding favorable treatment to Denham. Therefore, to the extent the plaintiff's

argument of pretext (as well as the fourth element of her prima facie case) is based on the defendant's actions in regard to Denham, the argument fails.

Nevertheless, even assuming *arguendo* that Petty did give favorable treatment to Denham, Bell, or other younger employees, the plaintiff has shown no evidence that any action attributable to the defendant was motivated by age. The Fifth Circuit has set forth guidelines which this court finds applicable in the present case:

> The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated. Even if the trier of fact chose to believe an employee's assessment of his performance rather than the employer's, that choice alone would not lead to a conclusion that the employer's version is a pretext for age discrimination. More is required, such as "direct" evidence of age discrimination, information about the ages of other employees in plaintiff's position, the treatment and evaluation of other employees, or the employer's variation from standard evaluation practices.

*Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir. 1988) (citations omitted).

Applying these guidelines to the present case, the court finds that Card has set forth no direct evidence of discrimination. The only evidence Card has presented that even remotely resembles direct evidence is the "hearsay within hearsay" statement of a coworker, Louella Steel, who "told Card that Petty had told another store manager that he was 'doing everything he could to terminate [Card].'" This assertion, in addition to its admissibility problems, makes no reference to age as a motivating factor in Petty's alleged campaign to terminate Card. In fact, Card has explicitly testified that she did not "know what [Petty's] motives were with regard to [her]." She testified similarly with regard to Burt as well. These statements alone undermine the plaintiff's case and warrant summary judgment. The *Bienkowski* court stated, "There must be

9

some proof that age motivated the employer's action, otherwise the law has been converted from one preventing discrimination because of age to one ensuring dismissals only for 'just cause' to all people over 40." 851 F.2d at 1508.

As there is no direct evidence of discrimination, the court, temporarily overlooking the plaintiff's admitted lack of motivation evidence, will examine the other factors set forth above: "information about the ages of other employees in plaintiff's position, the treatment and evaluation of other employees, [and] the employer's variation from standard evaluation practices." *Id.* These factors naturally overlap each other and will be considered as a whole.

It is uncontested that the defendant has younger employees in the plaintiff's position – among them Jamie Bell and Blair Denham. It is likewise uncontested that the defendant has other managers, like Card, who are over forty years of age. One of these is Joe Young, a manager of the defendant's store in Tupelo, Mississippi, whom Card attempts to use as a comparator. Young testified that on an occasion when he failed to initial certain paperwork – the same type of paperwork Card failed to initial – he was not reprimanded. This incident of disparate treatment is immaterial, however, as Young, who is fifty years old, is in the same protected class as Card and is therefore not a proper comparator. Further, the defendant accurately notes that Card's particular reprimand at issue included more than her failure to initial documents; thus, in addition to being an improper comparator due to age, Young is an improper comparator because he did not engage in the same conduct as Card. Card also asserts that other store managers were not written up for leaving the bar down across their stores' back doors, but she fails to identify these unknown store managers either in her responsive brief or her deposition. Card asserts that Petty and Burt visited her store far too frequently and that "[e]very

time [she] turned around, [she] felt like [she] was being questioned about something." Petty admits that he visited Card's store more frequently than others in the district but with the simple, plausible, and uncontested explanation that "[he] kept having problems" with policy violations at the store.

"In determining whether the employer's stated reason is false, the trier of fact may not disregard the defendant's explanation without countervailing evidence that it was not the real reason for the discharge." *EEOC v. Louisiana Office of Community Svcs.*, 47 F.3d 1438, 1443 (5th Cir. 1995). Not only has the plaintiff failed to present countervailing evidence that the defendant's proffered reason is false, she has admitted that she was unaware of the defendant's motives. She has likewise admitted that she committed the infractions listed against her and that some were terminable offenses for which she was nevertheless not terminated at the time. Her only argument against these admittedly legitimate reprimands was that they represented a pattern of behavior on the part of Petty and Burt to be "ticky" in their dealings with her. As mentioned above, "The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Bienkowski*, 851 F.2d at 1508. The plaintiff has shown the court no scintilla of evidence that the defendant's actions were unlawfully motivated.[5]

---

[5]The complete lack of evidence of age as a motivating factor in the defendant's actions diminishes the significance of the defendant's "same actor inference" argument, but the court notes its persuasive effect and applicability in the present case since Petty both hired and promoted Card (who was already in her forties at the time and therefore already a member of the protected class) and fired her approximately a year later, when she was forty-four. *See Noah v. Community Place*, 2011 WL 237701, *5 n.3 (S.D. Miss. 2011) ("Although not dispositive, and not necessary to rule for defendants in this matter, the same-actor inference would mitigate against a finding of pretext because 'it hardly mak[es] sense for an employer to hire employees from a group against which it bears [discriminatory] animus and then turn around and fire them once they are on the job.'" (quoting *Hervey v. Miss. Dep't of Education*, 2010 WL 5129726, at *6 (5th Cir. 2010))). The plaintiff asserts that the same actor inference is not

It is axiomatic that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). This court has engaged in none of those proscribed functions in determining that the defendant is entitled to judgment as a matter of law. The court readily accepts the credibility of the plaintiff and the witnesses on her behalf and views the case in the light most favorable to the plaintiff, but the court weighs no evidence and draws no inferences from the facts, not only because these are jury functions, but because there is no evidence of age discrimination and there are no contested material facts. In the absence of evidence that the defendant's actions were motivated by the plaintiff's age, it is impossible for the plaintiff to "prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision." *Moss*, 610 F.3d at 922 (quoting *Gross*, 129 S. Ct. at 2351).

## Conclusion

For the foregoing reasons, the court finds that there are no genuine issues of material fact, and the defendant is entitled to judgment as a matter of law. The defendant's motion for summary judgment shall be granted. A separate order in accord with this opinion shall issue this day.

This, the 11th day of July, 2011.

                                                */s/ Neal Biggers*
                                                **NEAL B. BIGGERS, JR.**
                                                **UNITED STATES DISTRICT JUDGE**

---

applicable in this case because Blair Denham's hiring was a superseding cause that changed the circumstances giving rise to the inference. As addressed above, however, the plaintiff has shown no favorable treatment toward Denham; favoritism is not actionable under the facts of this case; and it is uncontested that only one specifically alleged incident of "harassment" – a legitimate reprimand – occurred while Denham was employed at the defendant's Fulton store. Denham's hiring cannot therefore serve to nullify the same actor inference.